IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHARLES GARDNER )
)
v. ) NO. 3:14-1440
)
ERIC QUALLS, WARDEN )

TO: Honorable Bernard A. Friedman, District Judge

# REPORT AND RECOMMENDATION

By Order entered August 11, 2014 (Docket Entry No. 4), the above captioned Petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 was referred to the Magistrate Judge for further proceedings under Rule 8(b) of the Habeas Corpus rules, 28 U.S.C. § 636(b)(1)(B), and Rule 72.03 of the Local Rules of Court.

After review of the Petition, Respondent's Answer, and a Reply filed by Petitioner, the undersigned Magistrate Judge respectfully recommends that the Petition be denied and this action be dismissed.

## I. BACKGROUND

Charles Gardner ("Petitioner") is an inmate of the Tennessee Department of Correction ("TDOC") confined at the Bledsoe County Correctional Complex in Pikeville, Tennessee. On May 20, 1999, a jury in Davidson County, Tennessee, found him guilty of one count of first degree murder and two counts of reckless aggravated assault. For these crimes, he was sentenced to an effective sentence of imprisonment for life without the possibility of parole.

Petitioner's convictions arise out of events that occurred on October 18, 1997, when an unarmed security guard named Demetrius Laquan Wright ("Wright") was shot and killed at a now closed entertainment club in Davidson County called Club Yesterday. *See State v. Gardner*, 2001 WL 306227 (Tenn.Crim.App. March 30, 2001). The evidence presented at Petitioner's trial showed

that Petitioner had been forcibly ejected from the club in September 1997 by Wright and other security guards after an incident and a fight in the club, prompting Petitioner, once outside the club, to loudly threaten that he was "going to kill him [Wright]" and that he was going to "go get a gun." The evidence showed that Petitioner returned to the club during the early morning hours of October 18, 1997, entered the crowded club, located Wright inside the club, and shot him twice in the back. Wright died from his wounds shortly after being taken to a local emergency room. Two bystanders in the club that night were also shot in the legs. A witness testified at trial that she saw Petitioner shoot the victim directly in front of her and identified Petitioner as the shooter. Another witness testified that she saw Petitioner standing over the victim after she heard shots fired. Employees at the club also testified that they saw Petitioner enter the club and then saw him running out of the club after the gunshots were fired. Ballistics evidence produced at trial showed that a bullet recovered from the crime scene and two bullets recovered from the body of Wright were identified as being .38/357 caliber bullets that were similar to the other bullets that were recovered from the scene. Petitioner's first trial resulted in a hung jury and mistrial. After a second trial, he was found guilty of the crimes for which he is imprisoned.

Petitioner thereafter unsuccessfully sought relief from his convictions through various state court remedies. His direct appeal was denied. *State v. Gardner*, 2001 WL 306227 (Tenn.Crim.App. March 30, 2001). He then filed an unsuccessful petition for post-conviction relief, the denial of which was affirmed on appeal. *Gardner v. State*, 2004 WL 840086 (Tenn.Crim.App. April 16, 2004). Petitioner also pursued an unsuccessful *pro se* petition for a state writ of habeas corpus on May 18, 2005, the denial of which was upheld on appeal. *Gardner v. Parker*, 2006 WL 119635 (Tenn.Crim.App. January 17, 2006).

On February 7, 2011, Petitioner then filed a *pro se* petition in the state court for a writ of error coram nobis. *See* Docket Entry No. 16-21 at 3-10.[1] Petitioner contended that he had been

---

[1] Although Petitioner states in his Reply that his coram nobis petition was filed on January 31, 2011, *see* Docket Entry No. 21 at 2 and 5, he states in his Petition that it was filed on February 7, 2011. *See* Petition at 4 and 7. The file stamped date on the coram nobis petition

2

seeking a copy of his criminal case file from the Office of the District Attorney General since sometime in 2005 but had only received the case file in August 2010. He argued that newly discovered exculpatory evidence from the case file justified the equitable tolling of the statute of limitations for filing his petition and warranted relief because the evidence may have resulted in a different verdict if it had been presented at his trial. Specifically, Petitioner argued that his case file contained an Official Firearms Identification Report from the Tennessee Bureau of Investigation that provided the results of the ballistics examination and a conclusion regarding the bullets recovered by the police. Petitioner also argued that his case file contained, 1) a Nashville Metro Police Department Supplemental Report written by Detective Juan Borges, and 2) a handwritten note from Assistant District Attorney Katy Miller that was attached to a Case Evaluation Report and that referenced the Supplemental Report by stating "see supplement where someone else admitted to shooting their gun off in the club." The Supplemental Report states:

> On 10/18/97 a woman called the homicide office and stated that her friend went to visit her at her house. While her friend was at her house she page[d] a man by the name of Roosevelt, Colbert[.] Mr. Colbert went to the house with another man by the name of Keith, Odum[.] Both are M/B. The woman that called told me that while she was in her bedroom she overheard a conversation between the two subjects. She stated that Roosevelt was telling Mr. Odum that when he heard people shooting he also started shooting his 45. caliber pistol and he wasn't for sure if he also shot the security guard. Mr. Roosevelt also mention[ed] that he was still in possession of the 45. pistol. Roosevelt owns a station wagon and Odum owns a gray Monte Carlo. After they made those comments they change[d] the conversation and left the house soon after.

*Gardner v. State*, 2013 WL 794026, *2 (Tenn.Crim.App. March 5, 2013); Docket Entry No. 16-21 at 35.

The Davidson County Criminal Court dismissed the petition by written order on July 27, 2011, determining that it was untimely and that Petitioner failed to establish a cognizable claim. *See* Docket Entry No. 16-21 at 38-48. Upon appeal, during which Petitioner was represented by counsel,

---

contained in the technical record provided to the Court is not visible. *See* Docket Entry No. 16-21 at 3. However, in its opinion affirming denial of relief, the Tennessee Court of Criminal Appeals stated that February 7, 2011, was the date the coram nobis petition was filed. *Gardner v. State*, 2013 WL 794026, *1 (Tenn.Crim.App. March 5, 2013). Accordingly, the Court accepts February 7, 2011, as the filing date for the coram nobis petition.

the Tennessee Court of Criminal Appeals affirmed the denial of relief. *Gardner v. State*, 2013 WL 794026 (Tenn.Crim.App. March 5, 2013). The state court found that the ballistics report claim was not based upon newly discovered evidence and, thus, was not a "later-arising" ground for relief. Specifically, the information contained in the ballistics report was a part of the written report introduced at trial and testified to by a ballistics expert and was evidence that was available to Petitioner during trial. *Id*. at *5. The state court then reviewed Petitioner's claim based upon the Supplemental Report and the handwritten attorney's note and found they were insufficient to support the requested relief. *Id*. at **6-7. The state court found that the handwritten note was attorney work product that did not constitute grounds for relief. *Id*. at *6. The state court then found that Petitioner failed to show that coram nobis relief was supported by his claim based upon the Supplemental Report. *Id*. at **7-8. In analyzing the claim, the state court found as follows:

> Here, the coram nobis court concluded, and we agree, that the Petitioner has failed to present a cognizable claim for relief.
>
> "The decision to grant or deny a petition for the writ of error coram nobis on the ground of subsequently or newly discovered evidence rests within the sound discretion of the trial court." *State v. Hart*, 911 S.W.2d 371, 375 (Tenn.Crim.App. 1995). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson*, 367 S.W.3d at 235.
>
> As an initial matter, the record reflects that the coram nobis court, applied the appropriate standard of review and explicitly cited *State v. Vasques*, 221 S.W3d 514 (Tenn. 2007) and *Hart*, 911 S.W.2d 371, in its order denying coram nobis relief. Although the coram nobis court later concluded "the evidence provided by Petitioner as exhibits to his petition would not have resulted in a different judgment in light of the evidence against him," this comment, in our view, does not evince an application of the wrong standard of review. *Billy Ray Irick v. State*, No. E2010-02385-CCA-R3-PD, 2011 WL 1991671, at *15 n. 5 (Tenn.Crim.App. May 23, 2011).
>
> Next, the Petitioner argues that the coram nobis court erroneously stated that "Katy" did not prepare the "Case Preparation Evaluation." Even if true, the Petitioner fails to explain the significance of who generated the "Case Preparation Evaluation." It is clear from the court's order that it understood the difference between the boiler-plate "Case Preparation Evaluation" form which was unsigned, and the attached handwritten note which was signed by assistant district attorney Katy Miller. In our view, the import of the handwritten note was its reference to the report by Detective Borges, not who prepared the forms. We interpret the Petitioner's second claim, that the court's conclusion that the Petitioner "mischaracterized" the supplement report, as a challenge to the court's conclusion and not a factual error. Here, we further

4

observe that the Borges report did not identify the female caller and was therefore inadmissible hearsay. *Wilson*, 367 S.W.3d at 235 (quoting T.C.A. § 40-26-105(b)); Tenn. R. Evid., Rules 801, 802; Tenn. R. Civ. P. 26.02(3). (footnote omitted) More importantly, the third party who allegedly confessed to shooting in the club on the night of the offense admitted to firing a ".45 caliber pistol", and the bullets recovered from the body of the victim were from a .38/.357 caliber weapon. (footnote omitted)

Finally, the Petitioner contends that the coram nobis court erred by noting that there was an eyewitness who identified the Petitioner as the person who shot the victim. The Petitioner insists that there was no eyewitness to the shooting in our opinion in his direct appeal. This is simply incorrect. In the sufficiency of the evidence section of our opinion, we clearly set forth the testimony of Ms. Tanisha Stewart, the sole eyewitness to the shooting. *Gardner*, 2001 WL 306227, at *9. As shots were fired, Ms. Stewart was "looking directly at [the Petitioner]." Id. She said the Petitioner was standing approximately ten feet away from her when the shots were fired. Ms. Stewart positively identified the Petitioner from a photographic lineup and at trial as the man she looked in the face and saw holding a gun pointed directly at the victim's back. *Id*. The coram nobis court considered whether the alleged newly discovered evidence attached to the petition may have resulted in a different judgment at trial. The court denied relief in light of the evidence against the Petitioner at trial including the positive identification of the Petitioner as shooter by Ms. Stewart, firearm analysis, testimony about a previous altercation between the Petitioner and the deceased, and testimony regarding the Petitioner's threats to kill the deceased. The record supports the determination of the coram nobis court. Accordingly, the Petitioner has failed to show that the coram nobis court abused its discretion and is therefore not entitled to relief.

*Gardner v. State*, 2013 WL 794026, *7-8. Petitioner's application to appeal to the Tennessee Supreme Court was denied on August 14, 2013.

## II. HABEAS CORPUS PETITION, ANSWER, AND REPLY

Failing to obtain relief in the state courts, Petitioner filed a petition in this Court on November 4, 2015, seeking federal habeas corpus relief under 28 U.S.C. § 2254 to set aside his conviction and sentence. *See* Petition (Docket Entry No. 1-1). Petitioner raises four grounds for relief:

> 1. Petitioner was denied his right to a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution by the prosecution withholding exculpatory evidence. The state prosecutor had a police report of a witness's interview containing information that another person admitted shooting the victim. This information was not provided to the Petitioner's trial counsel;
>
> 2. Petitioner was denied his right to Due Process under the Fifth and Fourteenth Amendments by the coram nobis court's failure to grant a hearing on the Petition for Writ of Error Coram Nobis;

5

> 3. Petitioner was denied his right to Due Process under the Fourteenth Amendment by the Tennessee Court of Criminal Appeals denying him relief under the Petition for Writ of Error Coram Nobis; and
>
> 4. Petitioner was denied his right to Due Process, the right to participate in his trial, and effective assistance of counsel under the Fifth, Sixth, and Fourteen(th) Amendments to the United States Constitution by the denial of an interpreter to assist during all stages of the criminal proceedings to insure the Petitioner's understanding of the trial and criminal proceedings.

*See* Petition at 5-8.

Acknowledging that his Petition was filed several years after his direct appeal became final, Petitioner asserts that the statute of limitations should be tolled because he did not learn of the newly discovered exculpatory evidence until obtaining his criminal case file in 2010 and that he thereafter timely pursued his petition for a writ of error coram nobis in the state court. *Id*. at 11.

Respondent answers the Petition by first contending that the Petition should be dismissed as untimely. Respondent asserts that, even when the time periods during which the post-conviction relief and state habeas corpus proceedings were pending in the state courts are excluded pursuant to the provisions of 28 U.S.C. § 2244(d)(2), the applicable one year time period for Petitioner to have filed his Petition expired on August 28, 2006, approximately 8 years prior to it being filed. *See* Answer (Docket Entry No. 15) at 7. Respondent then argues that Petitioner has not met his burden of showing that equitable tolling should excuse the untimely filing of the Petition. *Id*. at 8-9.

As an alternative basis for dismissal, Respondent asserts that none of the grounds for relief have merit. Respondent contends that the first ground for relief is barred by procedural default because the petition for a writ of error coram nobis was rejected by the state court as untimely under state law, a determination which Respondent asserts is an adequate and independent basis for rejection of the ground for relief. *Id*. at 9-10. Respondent contends that the second and third grounds for relief fail to present cognizable claims for relief under Section 2254 because they raise only a challenge to the correctness of the state coram nobis proceeding. *Id*. at 10-11. Finally, Respondent argues that the fourth ground for relief is procedurally defaulted because it was never presented to the state courts in any form prior to being raised in the Petition. *Id*. at 12-14. In support of its

Answer, Respondent has filed pertinent documents from the record of Petitioner's state court proceedings. *See* Notice of Filing Documents (Docket Entry No. 16).

Petitioner has filed a Reply in which he contends that his Petition should be viewed as timely in light of 28 U.S.C. § 2244(d)(1)(D), which provides that the triggering date for the one year period of limitations can be deemed to be "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* Docket Entry No. 21. Respondent further argues that his claim that exculpatory evidence was withheld from his defense prior to trial was addressed on the merits by the state court in the coram nobis proceeding and the state court decision did not rest upon a procedural bar. *Id*. at 7. Respondent also contends that, assuming a procedural default applies to his claims, any default should be excused because the cause and prejudice showing necessary for review of his claims is satisfied by the fact that the State withheld exculpatory evidence. *Id*. at 7-10. Finally, Respondent argues that failing to address the merits of his claims would result in a miscarriage of justice in light of his assertion of actual innocence. *Id*. at 10-11.

### III. CONCLUSIONS

Upon consideration of the entire record, it appears that an evidentiary hearing is not required. Therefore, the Court should dispose of the Petition as the law and justice require. *See* Rule 8, Rules Governing Section 2254 Cases; 28 U.S.C. § 2254(e)(2); *Loveday v. Davis*, 697 F.2d 135, 137-40 (6th Cir. 1983).

A. Timeliness of the Petition

28 U.S.C. § 2244(d)(1) provides for a one year limitations period during which a state prisoner can bring a federal habeas corpus petition. This period begins to run from the latest of the following events:

> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2244(d)(1)(A-D). Once the limitations period begins, it can be tolled during "[t]he time [that] a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Petitioner contends that he should be permitted to take advantage of the delayed triggering date provided for in 28 U.S.C. § 2244(d)(1)(D). He argues that the several year delay by the State in providing him with the criminal case file prevented him from discovering the grounds for relief he now raises and that February 7, 2011, the date on which he was able to file the coram nobis petition in state court about those claims, should be viewed as the triggering date for the statute of limitations. He contends that, pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations was tolled until the coram nobis proceeding concluded on August 14, 2013, and that his federal habeas Petition, filed on July 10, 2014, was, thus, filed within one year of the triggering date for the statute of limitations. *See* Reply (Docket Entry No. 21) at 4-5.

After review of this matter, the Court disagrees and finds that the instant Petition is untimely. Even if the Court accepts that the State's failure to provide Petitioner with his criminal case file rendered the factual predicate for his current habeas claims undiscoverable and, thus, is an event that supports a delayed triggering date for the statue of limitations pursuant to Section 2244(d)(1)(D), Petitioner admittedly obtained the case file sometime in August 2010. *See* Reply at 2. Once in possession of the criminal case file, the factual predicate for his claims was no longer being withheld and could have been discovered by him through the exercise of due diligence. Accordingly, the triggering date for the statute of limitations arose at this time, and Petitioner had one year from August 2010 to file his federal habeas corpus petition. Approximately five months passed before

8

Petitioner filed his coram nobis petition on February 7, 2011. Once the coram nobis proceeding was concluded on August 14, 2013, approximately 11 more months passed until the instant Petition was filed on July 10, 2014. In the end, the Petition was simply filed at least four months beyond the expiration of the one year statute of limitations.

Petitioner's contention that the triggering date for the statute of limitations did not begin until he acted upon the newly discovered evidence by pursuing a state court remedy is inconsistent with the clear text of Section 2244(d)(1)(D). Petitioner has further offered no case law supporting this position. The delayed triggering of the statute of limitations provided for by Section 2244(d)(1)(D) simply does not occur in the manner argued by Petitioner. *See Redmond v. Jackson*, 295 F.Supp.2d 767, 771 (E.D.Mich. 2003) ("under § 2244(d)(1)(D), the time under the limitations period begins to run is when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts.").

Although not explicitly argued by Petitioner, his contention that "due process" justifies tolling could be viewed as an assertion of equitable tolling. The United States Supreme Court has held that the statute of limitations for habeas petitions is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). However, a habeas petitioner is entitled to equitable tolling only if he can make a two-part showing: 1) he has pursued his rights diligently; and 2) some extraordinary circumstance prevented the timely filing of his petition. *Holland*, 560 U.S. at 649; *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). The doctrine of equitable tolling is used sparingly by federal courts, *Robertson v. Simpson*, 624 F.3d 781, 783-84 (6th Cir. 2010), and Petitioner bears the burden of showing that he is entitled to use equitable tolling. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).

Petitioner fails to meet this burden. The hurdle that exists for Petitioner's equitable tolling argument is that, even if the Court has provided him with the benefit of a delayed triggering of the statute of limitations under Section 2244(d)(1)(D) because of the length of time it took for him to obtain his criminal case file, he cannot identify any extraordinary circumstance that prevented him

from timely filing his Petition after he obtained the case file in August 2010. The fact that Petitioner was proceeding *pro se* at the time he obtained the case file and waited several months to pursue a state court remedy simply does not warrant equitable tolling. Generally, a petitioner must show more than just his status as *pro se* litigant or a limited access to a law library to satisfy the "extraordinary circumstance" standard. *Hall*, 662 F.3d at 751. As the Sixth Circuit has repeatedly held, ignorance of the law alone is not sufficient to warrant equitable tolling. *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Smith v. Beightler*, 49 Fed.App'x. 579, 580-81 (6th Cir. 2002); *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). Further, he has not identified any extraordinary circumstance that caused him to wait nearly a year after the coram nobis proceeding was concluded to pursue his federal remedy.

The final avenue by which Petitioner can have his otherwise untimely Petition reviewed is through the narrow gateway of showing that a fundamental miscarriage of justice will occur if his claims are not reviewed because of his "actual innocence." *McQuiggin v. Perkins*, _ U.S. _, 133 S.Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). This requires Petitioner to make a credible showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). It must be "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 1935 (quoting *Schlup*, 513 U.S. at 327).

As the Supreme Court noted in *McQuiggin*, tenable claims of actual innocence "are rare." 133 S.Ct. at 128. *Accord Reeves v. Fortner*, 490 Fed.App'x. 766, 769 (6th Cir. 2012) (actual innocence is a demanding standard and permits review only in the extraordinary case). Although Petitioner raises this issue, *see* Reply at 10-11, he fails to meet the demanding standard required to sustain the actual innocence exception. The only support he provides for his assertion of actual innocence are the ballistics report and the Supplemental Report that underlie his habeas claims. While this evidence is certainly relevant to the crimes of which he was convicted and while it may have provided a basis upon which to argue at trial that another individual in the club also fired a

10

weapon on the night in question, consideration of the newly discovered evidence buttresses only a weak argument of actual innocence. First, the evidence itself is not directly probative of a showing that Petitioner is actually innocent. Further, use of evidence of a possible second shooter in the club as a basis to cast doubt as to Petitioner's guilt of shooting his victim to death is severely undercut by the fact that Petitioner's victim was killed by a different caliber bullet than the one the second shooter is purported to have shot. Finally, the newly discovered evidence is significantly outweighed by the substantial evidence against Petitioner, including eyewitness testimony.

B. Review of the Grounds for Relief

The untimeliness of the Petition is sufficient to warrant its complete dismissal. However, because Petitioner's ability to pursue a second or successive federal habeas corpus petition is strictly limited by the provisions of 28 U.S.C. § 2244(b), the Court nonetheless briefly addresses the specific grounds for relief raised by Petitioner for the sake of complete review. Even if the Petition was timely filed, the grounds raised would not provide a basis for relief.

Petitioner's first ground for relief is based on the State's failure to disclose to him exculpatory evidence. A claim under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that is based upon the suppression by the prosecution of evidence favorable to the accused requires that "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Petitioner must show that the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011). The *Brady* standard is not met if Petitioner shows merely a reasonable *possibility* that the suppressed evidence might have produced a different outcome; rather, a reasonable *probability* is required. *Strickler*, 527 U.S. at 291 (emphasis added). "A reasonable probability is a 'probability sufficient to undermine

confidence in the outcome.'" *Wilson v. Parker*, 515 F.3d 682, 701-02 (6th Cir. 2008) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

Petitioner fails to meet the prejudice showing required for a successful *Brady* claim. The state court hearing this claim as it pertains to the ballistics report found that the report was "clearly available to the Petitioner during trial" and that the results of the report were encompassed within testimony and an exhibit offered at trial. *See Gardner v. State*, 2013 WL 794026 at *5. This factual finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) that has not been rebutted by Petitioner. Because evidence that is merely cumulative to evidence presented at trial is not material and does not support a *Brady* finding, *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010), Petitioner's claim based on the suppression of the ballistics report lacks merit. His *Brady* claim based upon the suppression of the Supplemental Report likewise lacks merit. Even under a generous reading, there is not a reasonable probability that, had the report been disclosed, the results of Petitioner's criminal trial would have been different. Given the eyewitness evidence presented against Petitioner at trial and the fact that the Supplemental Report is of only limited exculpatory value, it cannot be concluded that the verdict against Petitioner is unworthy of confidence because the Supplemental Report was not made available to him for trial.[2]

Petitioner's second and third grounds for relief fail to support federal habeas corpus relief. In order to sustain a claim for federal habeas corpus relief, Petitioner must show that his convictions are in some way constitutionally defective. 28 U.S.C. § 2254(a); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). Although Petitioner's second and third grounds for relief are framed as denials of his right to Due Process in violation of the Fifth and Fourteenth Amendments, the grounds do not actually challenge the constitutionality of his convictions or sentence or even raise an issue that directly pertains to the fact or duration of his confinement. Instead, the two grounds merely challenge the correctness of the state coram nobis proceedings. However, a state is not

---

[2] Although Respondent raises the independent and adequate state grounds doctrine as a defense to Petitioner's *Brady* claims, *see* Answer at 9-10, it is unnecessary to address this defense in light of the other bases for dismissal of these claims.

constitutionally required to provide those convicted with a means by which they can collaterally attack their convictions, *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and alleged errors in state collateral relief proceedings do not present a basis for habeas corpus relief under Section 2254. *Kirby v. Dutton*, 794 F.2d 245, 246-48 (6th Cir. 1986); *Noles v. Osborne*, 2011 WL 2471547, *16 (M.D.Tenn. June 21, 2011) (Sharp, J.) (collecting cases).

Finally, Petitioner's fourth ground for relief raises a number of legal claims based upon his assertion that he did not have an interpreter at trial despite a state court order entered on December 8, 1998, that directed that he be provided with an interpreter during his criminal case. *See* Petition at 8-9. This ground for relief was never presented to the state courts in any fashion and has, thus, been procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483-84 (6th Cir. 2012). To excuse the procedural default, Petitioner must show "cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). Petitioner contends that the ground was not presented to the state courts because "the order was only recently discovered by the Petitioner." *See* Petition at 9. However, the state court order is a public order, was part of the technical record on appeal that was available after the criminal trial, *see* Docket Entry No. 16-1 at 53, and pertains to an issue of which Petitioner clearly would have been contemporaneously aware at the time of his criminal trial. Petitioner has provided no explanation for why he could not have discovered this order through the exercise of reasonable diligence, why he was prevented from discovering the order because of an impediment created by the state, or why it has been raised for the first time in the instant federal habeas petition. The burden of showing reasons to excuse a procedurally defaulted claim is on Petitioner, *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999), and he has not satisfied this burden. Although the State's suppression of *Brady* evidence can constitute cause under the procedural default doctrine, *Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), the state court order at issue was not suppressed by the State.

## RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge respectfully RECOMMENDS that the Petition for Habeas Corpus Relief be DENIED and this action be DISMISSED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge